The Anti-Sunshine Law, the law at issue in this case, is, in the words of the North Carolina Legislature, passed to suppress the speech of private special interest organizations like plaintiffs from engaging in exposés. Plaintiffs have standing on three bases to open the courthouse door- Well, we asked what it did was stop, maybe stop you from hatching a plan to invade somebody's privacy, maybe. Well, Your Honor, that's not what we have pled in our complaint. That's not what the North Carolina Legislature said, and in all due respect, that's a merits question for the First Amendment to be reached upon- The question I have is on standing. Do you look at standing in two regards? I'm going to ask you the same questions to the State. You have to look at, to see what you allege is more than speculative, correct on the front end. That you, as the facts that you assert, put you in a position that what you're claiming is a real impact on you, not just speculative, is that correct? That's correct, Your Honor, but can I clarify one point about that, which is that there's been a lot of discussion about speculation in this case, and the speculation analysis that's been advanced by both the district court and by defendants is the Clapper speculation analysis, and that's an analysis if we're alleging a future injury. We believe we satisfy that analysis, but we have a present existing evidence. Then don't you also, don't, of course, we can look at this jurisdictional question any time, correct? Yes. Despite what the court below said, correct? Well, I'm not sure which jurisdictional question you're referring to, but- Standing. Standing, yes, the court below- We always address standing, can't we? Yes, of course. Well, then looking at standing, and this, by the way, is not an argumentative question, and this, I'm asking for your view on this, do you have to connect the first analysis, which I call the, is it too speculative, is it real injury, to the injury or the right being asserted? Does that make any role in our standing consideration, the right that is being injured, or that is asserted? Do we look at that as well? Well, I believe you certainly do, Your Honor, and that's why we look at, that's why the Chill Doctrine exists, and that's why I don't believe the proper analysis- So for court, is it proper in your view, in the question of standing, for a court to look at what the right that is being infringed upon, or the injury that's being, supposedly being inflicted, may we look at that to say such a right doesn't exist, and so therefore no matter how concrete the fact assertion is, that still would not give somebody standing? I don't believe you can do that, Your Honor, I believe you need to look at the type of right- No, no, no- I understand your question- The fact is the assertion as to how it will impact you, that's factual assertion, isn't it? I'm sorry, Your Honor, I didn't- No, that's the factual assertion as to how the action of the statute will impact you, that's a factual assertion. We have people who are ready to go in there, we have people who then when, if they get in there, they will take pictures, that's factual assertion. Those are factual assertions, yes sir. And that to me seems to go to the question of how speculative, how speculative the factual scenario is, does that make sense to you? Those facts that you describe, Your Honor, yes, do go to how speculative, but only under the Clapper analysis. We don't, we believe we satisfy that analysis, and those facts, Your Honor, we're on a motion to dismiss here- I know that, I'm not asking if you satisfy them or not, I'm just asking you right now about the framework. Well I think that, you only get to that framework, sir, if you believe the Schill Doctrine doesn't apply. We believe the Schill Doctrine does apply. Well that's the second part of my question, and then you can proceed, I'm going to ask the other side the same thing. And it doesn't look like the district court analyzed it this way, I'm just saying that. But then in doing that, that's the first part, the factual assertions, when you look at what the injury or the right affected is, are you with me on the question now? Yes. Can the court ever, in determining whether or not they're standing, look at what the injury or right asserted is and say, there is no such right, and therefore, no matter how factual your presentation might be, you don't have standing because there is no such right, or there is no such injury to a right because there is no such right. Is that standing analysis? I do not believe it is, Your Honor, that would typically be a failure to state a claim analysis. No, clearly it would be on just the second part. But so no matter what the right of the court should never look at the right asserted to see if they're standing? I think it should look at the nature of the right asserted, I do not think it should look at the, whether the allegations in the case make out that underlying claim, that's once the courthouse door has been opened. What if the nature of the right asserted is by everybody in the world except the court bringing the claim, it's just lunacy, it doesn't exist? That would be easily addressed on a failure to state a claim. But standing still occurs? Correct. Is there any limitation to standing? There is limitation to standing, it's injury in fact, traceability, and redressability. I know, but that's all been on, if a person will sit down and just write that out, there's no limitation on standing. Oh no, so we have to allege facts that make those out, we certainly can't plead conclusory allegations. You can do that, a person can do that. Well if they, the way I think, if I'm understanding your question correctly, the way to test that would be a 12B1 motion where there could be evidence made that tested the validity of our standing allegation. I know, but you're getting beyond my question, my question is, you have not shown me any limitation under your view, and I think maybe that's right under your view, is there no limitation on getting rid of a case on standing if a person is just willing to assert, no matter if it's true or not, just assert the facts that I'm going to go in there, I'm going to get arrested, and it violates a right. That standing ended. So I think the answer to your question, Your Honor, if I'm understanding it correctly, is that the allegations do have to be plausible if you're doing it within the CLAP analysis. As to the right asserted as well? No, as to the fact that you were going to go in. So if, I think this case would be a much- I'm really talking more, I'm trying to talk, I'm really, in my thinking, I'm trying to think about to what extent, if any, do we look at the injury and the right asserted? That's what I'm looking at. Well, and I think you look at the right asserted to determine the nature of the injury, but you do not believe, to answer your question, that you look at whether that right asserted has been lawfully pled until you get to the failure to state a claim analysis, and that all can be done on the pleadings. I will note here, the government didn't even move to dismiss all the claims on the merits. They didn't, that was not part of their motion to dismiss. They moved to dismiss one of the claims, but not all of them. But if somebody said, if they were able, and then I'm going to leave this so that you make your argument, I think, we'll see. I'm happy to, I'm here to answer your questions, Your Honor. I know that, too. And so, what if somebody makes very sincere, factual allegations, and the injury, to be, they say what their received injury is, because I should really be the king of America, and if you do not let me, I have standing, because this will prevent me from being king. Now, that's the injury, that's the second part, but if you don't look at that for standing. I think you, I think this is where we keep on getting caught up, Your Honor. I think you do to see whether, what the nature of the injury is. I just told you what it is. Well, right, and I don't think anyone has the right to be king of America, and so there is no injury in that case. But that's different from saying the person's factual allegations making out their right to be king, do not entitle them to be king. We What's your right asserted here? Our right asserted is a First Amendment right, sir, to speak. To do what? To disclose information to the public. But we know, but it's actually not. It's a right to gather information. No, Your Honor, the, if you look, our right is to disclose information. If you look at the statute itself, in B1 and B2, it says you have to use the information.  That's certainly true, and the Supreme Court has repeatedly said the First Amendment covers the right to gather for precisely that reason. But it doesn't. It doesn't. Has the Supreme Court said there's a right to gather information in any and all circumstances? Certainly not. The Supreme Court has said that there is a right to gather information if that gathering is linked to speech. And I would point you to, most recently, the Tenth Circuit's decision in Western Watershed's Project, which discusses this exact issue. You think there's a right to break into somebody's house at night to take their private papers so you can expose corruption? You have a standing right to do that? I would say, Your Honor, that we have a right to get into court and then be dismissed on that allegation. We would lose on that allegation. I have no doubt that we'd lose. Why would you lose on that allegation? We'd lose on that allegation. Because you would have asserted the right. Same thing here. Informational. To get information. Right. We would lose on the motion to dismiss for failure to say the claim. Oh, gotcha. But you would win under a standing claim. If we could plausibly plead that either the statute that you were describing, which sounds just like a tort statute, so I think we'd lose on this. But if there was a new statute that said one cannot break into a house to gather information to release the public, either we could plausibly plead that we are a group of people who regularly do that. Or we could plausibly plead. Break into houses? I don't know of such group. But if we could plausibly plead that, then we would fall within the chill doctrine. Or if we could plausibly plead that we had a plan, we would fall within CLAPRA and we'd open the courthouse door. That's all we're talking about. And then we'd lose. Right? I think very quickly we would lose for a motion to state a claim. We're not talking about the second part. We're talking about standing. Yeah. Yeah. You might want to make the rest of your argument. Thank you very much. Well, I do. I think, John, part of what keeps me getting confused here is what is the nature of the injury that we're asserting? We believe this court's precedent clearly recognizes that chill applies. And for chill to apply, all we have to show is that we facially fall within the class of people regulated by the statute. And if there's no question here, because it's in the complaint, and the complaint is all we have, and the complaint must be taken as true, that the reason this statute was passed was to stop private special interest organizations from engaging in exposés. The government may very well come up with other arguments for how they can justify it, but we certainly fall within the class that is to be protected. And that allows us to have a suffering a present, existing, immediate, ongoing injury. The only reason the district court disagreed with that was the district court's belief that civil statutes should be treated differently than criminal statutes. And that has been rejected by this court, numerous other courts, and for good reason. The reason the chill doctrine exists is that we recognize that when the state passes a statute, it suppresses people's speech. People want to comply with the law, and people will work to comply with the law. And so when the state passes a statute, it suppresses speech, and it targets speech. It suppresses speech. And that influences the marketplace of ideas, which the First Amendment's meant to keep open. If the state could get around that formalistically by just calling something civil penalties rather than criminal fines, it would open up a whole new world of speech suppression, one that has been, again, rejected. But your view on standing is that as long as you can assert facts, I'm going to use assert, that makes the factual basis, on standing, just on standing. And as long as you can count your injury in terms of a protected right, standing exists. You may go out on something else. Standing exists. I believe we agree, sir, with the one exception that would say you have to do more than assert them. You know, this statute is a very particular kind of statute. I don't think you could get anyone in here coming in and saying that they wanted to do investigations. I don't think a random person could walk in off the street and just say, because I think the district court in that circumstance might very well be able to say that's not plausible. If a person has never done it in the past, has no real plan. Wait, wait, wait. No, no, no. I want to tell you something now. You're going to agree with me. Every investigative journalist did their first story. Right. I think that someone would have to say, I am an investigative journalist. This is my first story. I don't think a random person off the street, it needs to be a plausible allegation. You could say, I'm going to do an expose on this. Why isn't that sufficient? I think that... You know, I'll plan to... I'm going to do an expose. Heck, anybody can do one with the internet. I think that would be sufficient, and if the defendants in that case... I'd just say I don't see how that limits your view. I don't think it really does. Well, I think it's that the allegations have to be plausible, and the defendants want to test that. They can do a... No, they are plausible, because you accept them as true. This is your view on standing. You may be completely right. You just accept them as true, if the statement in the complaint factually make out the case of harm, and if you can say that harm is connected to... Just assert it's connected to some white, in any kind of way, just assert it, then standing occurs. I believe that is right, sir, as long as it is plausible. I think we... Just stop. What do you mean by plausible? I mean that if I said, I'm not an investigative journalist, I'm just a person who wants to conduct an investigation, let me into the courthouse. And I have no intention, I've never used this information before, I have no system in place to use it... I think you may be, under your view, you may be reshaping your own view too much. I don't know why a person could, why couldn't a person just say... You mean a person would say stuff that factually doesn't make out the case in an affirmative way? I mean that a person... What if this person just says, I want to, in this case, I didn't mean to tie this, but I want to protect animals, and I want to do an expose. Would that be enough, wouldn't it? I think it could be enough. I think this court could also say you need some prior conduct, as we have here. Just to wrap up very quickly, sir, this is all under the Clapper doctrine, which is about future injury, not about chill. What we keep on talking about is something, a different injury than... That's the one where you tie it to the First Amendment. That we tie, we both, chill and Clapper come from our First Amendment, yes. Because the injury asserted is the First Amendment. That is correct. And I will also say we also have an informational injury, which I'm happy to talk about on rebuttal, but I will reserve the remainder of my time. Thank you. All right, let's hear from the State. Good morning, and may it please the Court. My name is Shreepriya Narasimhan. I'm from the North Carolina Department of Justice, and I'm here today representing Attorney General Stein and Chancellor Carol Gould. This case calls for the Court to enforce the limits on standing that apply in pre-enforcement challenges to civil statutes. Those limits bar standing here for three reasons. First, the groups have no reasonable fear that the Act will actually be enforced against them. There are simply too many independent contingencies that must occur if the Act can be enforced against plaintiffs. Second, to the extent that the groups are seeking standing as recipients of information, they aren't able to identify a particular speaker willing to convey particular information to them. The identification of a particular speaker is what is required by the law. Finally, the group's claims aren't redressable against these defendants, Attorney General Stein and Chancellor Gould. These defendants simply do not have the authority to enforce the Act. Therefore, the injuries cannot be said to be fairly traceable to them. You heard my questions to the other side. Do you think we should, you don't make this argument, but I'm asking you, do we ever look at the injury asserted in determining standing? I think that we could conceptualize the injury in fact leg of the standing stool. Do we look at the injury asserted, yes or no, in the standing decision? We could as part of the injury in fact analysis. If there's no right, then there's no injury. Well, is that part of the standing analysis? We did not rely on that argument in the briefs. I know, but I said you didn't make the argument. I'm asking you now. Do we look at that in deciding standing? The facts asserted and whether or not then the right asserted is an actual right that we acknowledge. Do we look at that at all? Does that play in? It seems to me it does come in injury in fact, but to what extent do we explore that, especially in this case? The court could definitely explore that as part of the... Well, I know what we could do. I'm asking you what. Do we do in the analysis? Analysis is probably not necessary here because even if the question were on the line and on the margins, we could assume. You just want to rise and fall on your claim that they is too speculative basically? We will rise and fall on the claim that they have not asserted an injury in fact because their claims are too speculative. That's what I said. You want to rise and fall on your assertion that their claim is too speculative? Yes. That's one part of our theory. There's also an additional recipient of information standing argument that proves to be problematic as well. Why is it too speculative? Because in the run of the mill First Amendment cases that come up in the canon, usually the plaintiff is engaged in an ongoing speech that is then unlawful. Does it seem very speculative that the persons for whom this statute was passed are going to use the statute against somebody who violates it? That didn't seem particularly speculative to me. So what? Chapel Hill University got a statute passed in North Carolina to protect them that they don't plan to use. Is that what you would have us believe? We do not assert that anyone who could enforce a statute might want to. We're not disclaiming that. I know that, but you don't even answer my question. Isn't what happened here is in some measure research institutions, Chapel Hill University, they wanted this statute passed. Isn't that correct? I mean, is that in the record or not? You don't know. I am not certain that the University of Chapel Hill had any interest in pushing for the statute to be passed. But to address your question about the speculative... Somebody in North Carolina wanted it passed. You don't think the General Assembly, I don't know if you call it the General Assembly, met and said, you know what, we've got to pass tax on Brooklyn roads, Brooklyn education, and protect animal research centers. You don't think they just thought that up? That actually raises a good point in that this statute was written to provide a private right of action for... For whom? Research institutions? People conducting that type of research or whatever. For owners and operators of any premises that would be infiltrated and... Right, and so we think it's speculative to believe that whatever forces drove the General Assembly and the good elected officials of North Carolina and the then Governor signed the statute, those forces won't then come to play to use it against people who violate it? No, Your Honor, that's actually not our speculation argument. Our argument is that in order for the groups to be able to violate the statute, they must... there are a number of series of preconditions that must occur. They've got to get somebody hired, somebody willing to do it to get hired. Right. What else is there? That is actually the most important and most tenuous and speculative. What else is there, is my question. Anything else, really. They have to get hired. They have to actually observe conditions that they would want to document. They would have to be in a position to be able to document those conditions. And then when they are ready to actually disseminate that information in breach of a duty to the employer, that is the point at which they would violate the statute. Until that point, all the actions until that point, if they make all of those actions, they actually aren't at the point where they violate the statute. It's when they breach the duty of loyalty. That's the point at which they violate the statute. But they have people willing to do that. They can't guarantee or even say with any amount of certainty. Standing doesn't require a guarantee. No, but it does require that the risk that the statute will be enforced against them is certainly impending under the Susan B. Anthony List case of the Supreme Court. I just want to be clear. In this argument, you are winning as to the most narrow standing, whoever that is, not the informational recipients, but there is too much speculation for anybody to have standing there. Too much speculation for anybody to have standing. At this point, based on these allegations? Well, we're only at this point under these allegations. You hear on this case, you say in this case, at this point, at the point at which the court decided, and nothing has changed since the point. Nothing has changed in your argument as factually or speculation from the time the district court ruled, correct? Yes, that's correct. And so you say there's nobody who has standing on the premise that it's too speculative. Let me make sure I understand your question. You're saying that there's no standing because there's nobody who has standing because for anybody who wants to bring this suit, anybody involved in this suit, their injury is too speculative. No, Your Honor. Actually, if there were allegations that there are current employees, for example, Is that in this case? No, that's not in this case. We're in this case under these allegations. And I just want to be sure. I think I hear you saying that there's nobody that has standing because it's too speculative as to what they will do or what will happen to them. Yes. Could you comment on the Wikipedia Foundation decision in 2017, which held that Clapper does not apply when the injury is actual and ongoing, like in the First Amendment case? Yes. In the Wikimedia case, this court decided that Clapper was not totally appropriate because in Wikimedia, the plaintiffs were undergoing an ongoing Fourth Amendment violation that prompted them to chill their speech. In Clapper, the plaintiffs alleged that they would have a Fourth Amendment harm in the future, and that Fourth Amendment harm and the anticipation of that Fourth Amendment harm caused them to chill their speech today. But do you disagree that they are asking, that the appellants in this case are talking about a current injury in fact as opposed to a future injury in fact? Yes. The appellants in this case are talking about current injury in fact as chill. But the court in Clapper made very clear that chill alone is insufficient to grant standing. In fact, the court in Clapper cautioned that a plaintiff could not manufacture standing by chilling their own speech for fear of a hypothetical future harm. The future harm must be certainly impending, and they must be at a substantial risk of incurring that harm. And that's what the court said in Susan B. Anthony List as well. So that's where the nexus between sort of the run-of-the-mill Article III standing cases and the pre-enforcement challenges under the First Amendment cases lie. Under pre-enforcement challenges, one can come to court when one has chilled one's own speech, but that chill must be based on a fear of certainly impending harm in view of being in a position to have the act enforced. But neither the chancellor nor the attorney general have disavowed that they won't seek enforcement under this act. Yes, Your Honor, and that's actually because they can't. They are not the enforcers of the statute, so they don't actually have the authority to disavow it. Well, the attorney general does. I beg your pardon? The attorney general certainly does. No, Your Honor, actually we don't believe that the attorney general does because the statute does not allow the state to bring an enforcement claim. It doesn't grant enforcement authority to the state. You say that simply because it's a civil act? No, Your Honor, we don't. For example, in the Mobil Oil case of this court, the statute specifically allowed for there to be an enforcement mechanism by the attorney general through the state, through the Commonwealth, I beg your pardon. And that is what grants the enforcement authority to the attorney general. In this case, the enforcement authority lies with the owner or operator of the premises, which for most state buildings is either the Department of Administration, which owns and leases the buildings, or the head of the state agency, which would operate. Who represents those people when they get sued? The attorney general represents those people, but he does so in the shoes of the lawyer, not in the shoes of the party enforcing the statute. So when a court wants to enjoin a party from performance of the law. Who decides whether or not North Carolina, if this were to happen in North Carolina, who decides for the university whether or not they want to sue the people who did it? In general. The GSA of North Carolina decides that? No, sir, actually by statute, the Board of Governors is a party that sues and can be sued in court. And actually, this court said that most recently in the Board of Governors versus Department of Labor case. And the chancellor or whoever of North Carolina has nothing to do with any of that? There is. The Board of Governors has designated the chancellor in a limited capacity to be able to sue. In other words, the Board of Governors may go, we're going to sue the chart of these people. And the chancellor will go, don't do it. Please don't do it. We don't want you to do it. Please don't do it. He has no say in it, no role in it. Well, we would hope that the Board of Governors would take the chancellor's view into account. But technically under the statute. I don't know who it is, so maybe not. Of course, Your Honor, we would. But the Board of Governors would technically be able to sue because they are statutorily the party that is allowed to sue. Now, we don't mean to suggest that in no cases can the chancellor initiate litigation. But those cases are simply a sliver of the delegation of authority that the Board of Governors has given the chancellor. Well, there's no standing because he sued the wrong party. That's not a standing issue, is it? So I'd like to answer that in two parts.  And the injury they fear of is too speculative. But even if they could assert an injury, they still wouldn't have standing because they fail the second prong of the sort of three-legged stool of standing, which is the traceability requirement. The harms that they allege cannot be fairly traced to these defendants. What about the fear and slap with the severe civil fines under this act? Can that not cause a chilling effect? The fear of being slapped with civil penalties is only a substantial, is only a reasonable fear under this court's ruling in coxy if they might actually violate the statute and then be slapped with civil fines, civil penalties. They are not yet in a position to violate the statute. What is that? I don't understand your answer, to be honest with you. He just asked, fear of a grave civil penalty. Could that not have a chilling effect? It seems to me the answer is it certainly could. And maybe you have some legal reason why it doesn't in this case. But a fine of $1,000 a day or whatever it is, that couldn't have a chilling effect on somebody's exercise of their rights? I didn't mean to suggest that it couldn't have a chilling effect. It certainly can have a chilling effect. But that chilling effect does not take root until they are at a substantial risk of actually violating the statute. If there's no risk that they violate the statute. So your answer is it's too speculative? Correct, correct. The chill and the fear of being slapped with violations must. If it's not too speculative, that $1,000 then is sufficient for injury? Sure. So if we say it's not too speculative, then you lose? If we say their injury is not, their assertions for standing, their assertions are not too speculative, then you just lose. We lose on the injury front. There's still the traceability problem, but we would lose on the injury front. What do you think the injury asserted here is? It seems to me that the injury is in two parts. One is that they are afraid that the statute will be enforced against them, so they have stopped from preparing. No, you just talked about how the statute works. We know that. What's the injury they're asserting? In my understanding, they appear to assert that they have not even begun to take steps to perform investigations because they fear that if they performed an investigation. The First Amendment? Correct. The First Amendment. So you see their injury as a First Amendment claim? Yes, Your Honor. Do you think it's a valid First Amendment claim or you don't really need to address that? The district court didn't decide the case on the merits, so that isn't before this court, but we certainly would challenge it if it went back down the district court. We certainly would challenge it as a failure to get a claim. But I understand what you're saying is that's not to be considered for standing. Yes, Your Honor. That may not be considered for standing here. Can you ever look at injury, the injury asserted, for purposes of a standing amount? Yes. I can envision a scenario if the court decides that there's simply no right under the First Amendment. Is there a right here? I think that that is a question on the margins, which would require more of an analysis on the merits basis. So you have no answer on that? But I don't think it matters entirely. I got that, but I want you to define for me what you're representing. What do you think the right here is? What right? The right to gather that information? The right to give it to the public? What's the right here? I think the right that is being asserted is the right to disseminate that information. And you think that is, under these facts and under this case, that is the injury we should focus on? Yes, Your Honor. Okay. I would also like to touch upon the information recipient theory of standing as well here for the few minutes that I have left. To the extent that the groups claim that they have standing based on their right to receive information, this also fails. Because while there is a First Amendment right to receive speech, this right isn't limitless. As this court stated in ACLU v. Holder, a plaintiff alleging that she has the right to receive speech must also show that there is a particular speaker willing to convey particular information to them. Do you think the civil and criminal distinction matters? Do you think that is the basis for a resolution of the standing issue that is presented to us? No, Your Honor, it doesn't. Because in this case, it is just a civil liability. The way in which a civil versus... The district court drew that distinction. You didn't seem to really argue it. Do you think that is the distinction on which we can base our decision? We are not relying on that distinction here. I take that as a no. Politely. A no with all due respect. Absolutely, Your Honor. When the groups have failed to be able to show that the PETA groups will be able to access this information, they are also unable to show that they can rely on that information when it eventually comes to occur. Basically, the group's argument appears to be that they have in the past received information from other advocacy organizations and in the past have used that information in their own advocacy. But they have not here alleged facts that show that there are advocacy organizations that are willing and able to give that information right now. And because the same sorts of speculative suppositions surround PETA's own argument that they will eventually be able to receive information, that hampers the organization's ability to receive information as part of their standing argument as well. Because the plaintiffs have failed to allege that their harms are not speculative, that they have an ability to identify a particular speaker, and because the harms they have alleged are not traceable to the Attorney General and Chancellor Folt, we respectfully request that this Court affirm this Court's decision. Thank you. Thank you. Riplock. Judge Floyd, I'd like to pick up with your question about Wikimedia because I think it actually solves a lot of the problems here and that it entirely rejects the analytical approach the state has put forward. Wikimedia draws a distinction between chill and future injury. We believe we've alleged both, but if you find that we have chill, you don't get into the Clapper analysis, and Wikimedia makes that very clear. It says Clapper's in a posit where there's chill. And we have chill here because we fall within the statute. In North Carolina Right to Life, for instance, the state explicitly said they did not intend to enforce the statute. And nonetheless, this Court found that there was chill because the statute applied to those plaintiffs. It really targeted those plaintiffs and stopped them from going forward. Even if you were to get into the Clapper analysis, and this is part of the colloquy Judge Shedd and I were having, we think we've more than sufficiently alleged a plausible basis for how we are likely to fall within the statute unless we're suffering a future injury. We've alleged we have people on staff. We've alleged we have identified targets. We've alleged we have information that those targets are currently engaged in activities we want to disclose. We've alleged that we've previously gained access to those facilities twice for multiple months at a time. These are the types of allegations that bring us well within Clapper. I think I heard the other side say they want to rest on the speculative argument. And I think you just outlined why you think your argument is not speculative. That's exactly right. Because you allege you have people in place, you have people who will do it. And I think I heard them say that injury, my second question of exploring, Stanley, I don't think they care really to explore that in this case at this point because they said yours was a right to disseminate information. Did I hear them correctly? That's correct. So your argument now is in response to everything at least I've asked is what is really honed to is not civil criminal. That's our Jewish fact. By the way, because the district judge ruled, it doesn't mean he's wrong necessarily and he rules on what he has. So I'm not suggesting any of that. But we're not being asked to decide on that basis. We're not being added to the side on anything that I ask about the injury side because they give you that. Correct. The only thing they really focused on when I press them like I press you is speculative nature of this. Isn't that correct? That's correct. Tell me why it's not speculative in a way that courts have ever looked at speculation to prevent standing. Just what you just said, isn't it? Exactly. And, again, there are two bases. One is that we fall within the chill doctrine. Oh, no. And we're immediately being injured. There's no speculation whatsoever. It's a double injury already. And even if we fall within Clapper, we have clearly alleged how we would bring ourselves within the statute. Something to remember here is in Clapper the statute did not apply to those plaintiffs. Those plaintiffs were domestic individuals. They were saying that they feared a statute about gathering information of foreign people, and, therefore, the court naturally demanded a decent amount of evidence to say how the statute would apply. This statute applies to us, and we're showing you how we would fall within it. I do want to just, because they raised it, I want to briefly address the redressability issue. And I agree with you, Judge, that that's not really a standing issue. Because they fully acknowledge that an individual could enforce the statute. They basically have said we sued the wrong person. It's a Rule 19 issue, if anything. We, in fact, asked below whether to be allowed to amend if that's what the district court concluded. Obviously, the district court didn't go in that direction, but that would be a simple solution. Are we having trouble finding somebody who's more state responsibility for enforcing this against him? Well, the state seems to have taken the position that they can divide up authority, and we have to chase them around the country to figure out who all the different people who could enforce it. I think I heard maybe some poor leasing agent in North Carolina is going to be put on the skewer. But, I mean, you do not even need to go that far. If you look at JA80, JA80, which is the delegation of authority from the Board of Governors to the Chancellor, says very explicitly that not only does the Chancellor have the ability to initiate litigation in her own right up to a statutory damages cap, but she must, must initiate all other litigation. So to your question, Judge Shedd, we read that to say the Board of Governors couldn't start litigation on its own. If it's litigation on behalf of the university, that the Chancellor must initiate it. Let me raise a question with you unrelated to anything that we've talked about, and I just want to put this on the record. I didn't quite think about the understanding of how the university is controlled there with the Chancellor and the Board of Governors. I think it's called the Board of Governors. That's right, sir. I may know somebody on the Board of Governors. Does that cause, do you think that causes any conflict here at all? We certainly do not believe so. Okay. I just want to be sure. Do you think that causes any conflict? I just want to state that as so. If a judge knows somebody on that, you don't think that's any conflict in this case that would lead to us refusing? I can't think of it. You understand, you can speak without any kind of recrimination for me if you think so. No. You understand that? Yes. You understand that too? All right. Thank you very much. All right.
judges: William B. Traxler, Jr., Dennis W. Shedd, Henry F. Floyd